UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTA SOLES, #310311

       Petitioner,

                                    Civil No: 03-75116
                                    Honorable Bernard A. Friedman
                                    Magistrate Judge Virginia A. Morgan

v.

FABIAN LAVIGNE,

       Respondent.

---

MEMORANDUM OPINION & ORDER DENYING
PETITION FOR WRIT OF HABEAS CORPUS

## I. INTRODUCTION

This matter is before the Court on Petitioner's, Marta Soles', *pro se* request for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254. Respondent filed his Answer in Opposition to Petition for Writ of Habeas Corpus. Petitioner was charged with assault with intent to murder in violation of MCL §750.83, possession of a firearm during the commission of a felony in violation of MCL §750.227b, and with being an habitual (second) offender pursuant MCL §769.10. Subsequent to a bench trial in Wayne County Circuit Court, on March 14, 2000, Petitioner was convicted on all counts. On March 30, 2000, Petitioner was sentenced to thirty to sixty years for the assault with intent to murder conviction; and a mandatory two year consecutive prison term for the felony firearm conviction.

Petitioner challenges the legality of his conviction and raises one issue for the Court's review. Petitioner asserts that his Sixth Amendment right to confront adverse witnesses was violated and

that his conviction should be reversed.  It is Petitioner's position that the trial court erred by permitting the admission of Complainant's incriminating statements, which were made to a police officer.  Petitioner contends that the statements were hearsay and not within any of the recognized hearsay exceptions.  Respondent argues that although Complainant's statements were hearsay, they were admissible because they came within the excited utterance and/or present sense impression exceptions under the hearsay rule.  Therefore, it is Respondent's position that the trial court did not err in allowing the admission of Complainant's statements; and Petitioner's Sixth Amendment rights were not violated.

Upon review of the pleadings, the Court denies Petitioner's Writ of Habeas Corpus.

## II.  STATEMENT OF FACTS

The prosecution theorized that the Petitioner shot Dennis Brown (hereinafter "Complainant") in the head for revenge.  Petitioner  believed that Complainant was a "snitch" relative to Petitioner's alleged drug dealing activities.[1]  Several witnesses testified about what they heard and what they saw on the night of the shooting. However, none of the witnesses actually saw the Petitioner shoot the Complainant, nor could any witness state with any certainty that they saw the Petitioner enter or leave Complainant's apartment when the shooting took place.  The testimony relative to the actual shooting is set forth below.

Jennifer Grzbyk (Petitioner's girlfriend) testified that on the night of the shooting, August 3, 1999, she drove Petitioner and his friend "Dubby" to Wood Brook II, a/k/a, Terrace Village

---

[1]

Petitioner allegedly discovered that the Complainant was working as a confidential informant for a drug enforcement agency (i.e., Down River Narcotics Organization).

Apartments. *(Waiver Trial Transcript, Volume II, pp. 9-15, 35-36)*. Complainant also resided in the Terrace Village Apartments. *Id.* After arriving at the apartment complex, Ms. Grzbyk testified that she let Petitioner and Dubby out of the car and waited for them, however, she did not know where they were going or for what purpose. *Id.* Ms. Grzbyk testified that, after about five minutes, Petitioner and Dubby returned to the car acting hurried and looking scared. *Id.*

Aliza Franklin, a temporary roommate of Ms. Grzbyk's, testified about the time frame in which Ms. Grzbyk, Petitioner and Dubby were gone from Ms. Grzbyk's home. *Id.* at 49-57. Tonya Atherton testified that she lived next door to the Complainant and heard wrestling and fire cracker sounds come from the Complainant's apartment on the night that the he was shot. *Id.* at 80-84. Ms. Atherton further testified that after she heard the firecracker sounds she looked out of the window and saw two males, she believed to be African American, running across the street. *Id.* at 83-84, 87. Ms. Atherton then left her apartment and was about to make her way over to the Complainant's apartment. *Id.* at 88-90. It was at that time that the Complainant left his apartment, and came out into the hallway with a towel over his bleeding head. *Id.* An ambulance and the police subsequently arrived. *Id.*

Makeda Wright, Dubby's girlfriend and the mother of one of his unborn child at the time, testified that Dubby told her that Petitioner pistol whipped and shot the Complainant. *(Waiver Trial Transcript, Volume III, pp. 35-36, 40)*. Ms. Wright also testified that the Petitioner confirmed that he pistol whipped the Complainant. *Id.* at 57-58. The testimony is not as definitive regarding Petitioner's admission to Ms. Wright that he shot the Complainant. Ms. Wright testified that Petitioner said "Yeah, I did it." *Id.* Whether "it" means the shooting as well as the pistol whipping is not clear.

3

The most incriminating and direct evidence against the Petitioner are the statements the Complainant made to Officer Raboczyak, which is the crux of Petitioner's habeas petition. Officer Raboczyak testified: (1) that he arrived on the scene approximately nine minutes after he was dispatched; (2) that the Complainant was agitated, angry, panicky and upset; (3) that the Complainant told him that Petitioner, a/k/a "A-1," and another individual came into the Complainant's apartment; (4) that the Complainant told him that Petitioner began to smoke crack cocaine in the apartment; (5) that when the Complainant told Petitioner, identified by the Complainant as "A-1," not to smoke in the apartment, Petitioner pulled out a gun and began to pistol whip him; and (6) that the Complainant told him that after Petitioner was finished beating him with the gun he (Petitioner) and his friend left. *(Waiver Trial Transcript, Volume II, pp. 67-71).* Petitioner was unaware that he had been shot. *Id.*

Dr. Oren Sager, a neurology expert, testified that it was not unusual for the Complainant not to realized he was shot since there are so many different types of injuries that can occur to the scalp which would make it bleed (i.e., pistol whipping). *Id.* at 78-79. It was necessary for the Complainant to be operated upon immediately or else death was imminent. *Id.* at 64-76. Even though the Complainant survived the surgery, it was Dr. Sager's opinion that the Complainant will need to be in an assisted living environment for the rest of his life due to the severity of the Complainant's injuries and the permanent brain damage that was caused. *Id.* at 77.

## III.  PROCEDURAL HISTORY

Subsequent to a bench trial in Wayne County Circuit Court, on March 14, 2000, Petitioner was convicted on all counts. On March 30, 2000, Petitioner was sentenced to thirty to sixty years for the assault with intent to murder conviction; and a mandatory two year consecutive prison term

4

for the felony firearm conviction.  Petitioner appealed his conviction as a matter of right to the Michigan Court of Appeals and posed the sole issue of whether the trial court abused its discretion by admitting into evidence statements made by the Complainant to a police officer under MRE 803(2) or alternatively under MRE 803(1).  On March 1, 2002, in an unpublished opinion, the Michigan Court of Appeals affirmed Petitioner's convictions and sentences for assault with intent to murder and felony firearm.  *People v. Soles,* 2002 WL 362780, Mich. Ct. App. No. 227346 (per curiam) (March 1, 2002).  In its opinion denying relief, the Michigan Court of Appeals  ruled that Petitioner's statements were properly admitted into evidence and his Sixth Amendment rights were not violated.

Petitioner filed an application for leave to appeal with the Michigan Supreme Court relative to the same sole issue.  The Michigan Supreme Court entered an order on September 30, 2002 denying relief to the Petitioner by stating: "On order of the Court, the application for leave to appeal from the March 1, 2002 decision of the Court of Appeals is considered, and is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court." *People v. Soles,* 467 Mich. 882; 672 N.W.2d 858 (Table) Mich. Sup. Ct. No. 108578 (September 30, 2002).

On or about December 22, 2003, Petitioner filed a Petition for Writ of Habeas Corpus which is presently before the Court, raising the same claim he presented to the Michigan appellate courts. Respondent answered the Petition making the same above referenced arguments.

For the reasons set forth below, Petitioners request for Writ of Habeas Corpus is denied.

## IV.  <u>STANDARD OF REVIEW</u>

Under the applicable standard of review set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA), codified at 28 U.S.C. §2254(d),  a petitioner is not entitled to relief in a federal habeas corpus proceeding unless the state court's adjudication of his or her due process claim resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Under AEDPA, "clearly established federal law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412 (2000). A state court decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 412-13.

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  Furthermore, a federal court may not issue a writ of habeas corpus under the "unreasonable application" clause of 28 U.S.C. §2254(d) "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*  at 365;  *see also Prince v. Vincent,* 538 U.S. 634, 638-39 (2003). "[A] federal habeas court making the 'unreasonable application' inquiry should

6

ask whether the state court's application of clearly established federal law was *objectively* unreasonable," as opposed to transforming the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was reasonable. *Williams v. Taylor,* 529 U.S. at 411.

Therefore, the threshold inquiry in this case is whether the Petitioner seeks to apply a rule(s) of law that was clearly established at the time of his conviction in the state court. *See, id.* at 412.

## V.  APPLICABLE LAW & ANALYSIS

### A.  Whether the Michigan Court of Appeals Reasonably Applied U.S. Supreme Court Law Relative to the Admissibility of Complainant's Hearsay Statements to Officer Raboczyak

Petitioner asserts that his Sixth Amendment right under the Confrontation Clause was violated when the trial court permitted hearsay statements made by the Complainant to be admitted into evidence through Officer Raboczyak's testimony.   The Confrontation Clause of the Sixth Amendment provides: "[i]n all criminal prosecutions, the accused shall enjoy the right  . . . to be confronted with the witnesses against him."  Case law provides a general approach for determining when incriminating statements are both admissible under an exception to the hearsay rule and in compliance with the Confrontation Clause. *Ohio v. Roberts,* 448 U.S. 56, 65 (1980) (reversed on other grounds).  The Confrontation clause "operates in two ways to restrict the range of admissible hearsay." *Id.*  "First . . . the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." *Id.*  Second, once a witness is shown to be unavailable, "his statement is admissible only if it bears adequate 'indicia of reliability,'" *Id.*

7

"Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Id.* at 66; *see also, White v. Illinois,* 502 U.S. 346, 356-57 (1992). "In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Id.; see also, Mancusi v. Stubbs,* 408 U.S. 204, 213 (1972). "[E]ven if certain hearsay evidence does not fall within 'a firmly rooted hearsay exception' and is thus presumptively unreliable and inadmissible for Confrontation clause purposes, it may nonetheless meet Confrontation Clause reliability standards if it is supported by a "showing of particularized guarantees of trustworthiness." *Lee v. Illinois,* 476 U.S. 530, 543 (1986), *see also, Idaho v. Wright,* 497 U.S. 805, 818-19 (1990).

It is Petitioner's position that the statements testified to by Officer Raboczyak were hearsay and inadmissible under the rule. Respondent concedes that the statements were hearsay, but contends that they were admissible under the excited utterance and/or present sense impression exceptions to the hearsay rule. MRE 803(2) allows admission of a statement otherwise excluded as hearsay when the statement is an excited utterance, which is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The trial court's determination as to whether the declarant was still under the stress of the event when the statement was made is given wide discretion. *People v. Smith,* 456 Mich. 543, 550; 581 N.W.2d 654 (1998). MRE 803(1) allows admission of a statement otherwise excluded as hearsay if the declarant had personally perceived the event, and the statement was made "substantially contemporaneous" with the event. *See, People v. Hendrickson,* 459 Mich. 229, 236; 586 N.W.2d 906 (1998).

8

The Michigan Court of Appeals in this case found as follows relative to this issue:

> Three requirements must be met in order for testimony to be introduced under the excited utterance exception: (1) the statement must arise from a startling event; (2) there must be no time for contrivance or misrepresentation by the declarant at the time the statement is made; and (3) it must relate to the circumstances of the startling event. *People v. Kowalak (Remand),* 215 Mich. App. 554, 557-558; 546 N.W.2d 681 (1996). In this case, the victim was beaten and shot in the head, which was a startling event. The statements were made to the officer approximately nine minutes after he was dispatched, which eliminates the possibility of contrivance or misrepresentation. Additionally, when the statements were made, the victim remained in a panicked, upset, and angry state, and he gave sporadic answers. Finally, the statements identified the victim's assailant as defendant, which clearly relate to the circumstances of the startling event. Accordingly, the trial court properly admitted this testimony into evidence under MRE 803(2). Because we conclude the trial court properly admitted the evidence under MRE 803(2), we need not address whether admission was also proper under MRE 803(1)

> Accordingly, the trial court did not abuse its discretion in admitting the officer's testimony under MRE 803(2). Further, even if the trial court did abuse its discretion, the admission of the evidence was harmless beyond a reasonable doubt because the trial court articulated other evidence supporting defendant's guilt. Defendant has failed to demonstrate that it is more probable than not that the error, if any, was outcome determinative. *People v. Lukity,* 460 Mich. 484, 495-96; 596 N.W.2d 607 (1999).

*People v. Soles,* 2002 WL 362780, Mich. Ct. App. No. 227346, *1-2, (per curiam) (March 1, 2002).

Petitioner's retort is two-fold. First, he asserts that Complainant's statement to Officer Raboczyak that he (Complainant) was "going to get the guys" that "did this" to him indicates the Complainant's motive to fabricate and misrepresent how he was injured. Therefore, the statements should not have been admitted due to their unreliability and lack of trustworthiness. The Court finds that the Michigan Court of Appeals reasonably applied the law relative to the admissibility of probative hearsay statements under *Ohio v. Roberts,* 448 U.S. 56 (1980) and it progeny (i.e., *White v. Illinois,* 502 U.S. 346 (1992); *Idaho v. Wright,* 497 U.S. 805 (1990); *Coy v. Iowa,* 487 U.S. 1012

9

(1988), etc.)

"To exclude such probative statements under the strictures of the Confrontation Clause would be the height of wrongheadedness, as given that the Confrontation Clause has a basic purpose, the promotion of the 'integrity of the factfinding process.'" *White v. Illinois,* 502 U.S. at 367, quoting, *Kentucky v. Stincer,* 482 U.S. 730, 736 (1987). "[A] statement that qualifies for admission under a "firmly rooted" hearsay exception is so trustworthy that adversarial testing can be expected to add little to its reliability." *Id.* Moreover, as previously stated, even if Petitioner's statements were presumptively unreliable and inadmissible for Confrontation Clause purposes, due to Complainant's alleged motive "to get" the Petitioner, the Confrontation Clause reliability standards can still be met if it is supported by a "showing of particularized guarantees of trustworthiness." *See, Lee v. Illinois,* 476 U.S. at 543.

Finally, if the Court were to agree that Complainant's statements were some how unreliable because of Petitioner's alleged motives, the Court finds that it would have been reasonable for the appellate court to allow the admissibility of Complainant 's statements under MRE 803(1). Complainant's statements were about what he personally perceived happening to him; and according to the record, the statements were made "substantially contemporaneous" (i.e., several minutes after the assault and approximately nine minutes after Officer Raboczyak's dispatch) with the assault. *See, People v. Hendrickson,* 459 Mich. at 236-37 (statements made within a four to sixteen minute interval after the perceived event satisfy the substantially contemporaneous requirement).

Second, Petitioner contends that *Crawford v. Washington,* 541 U.S. 36 (2004) is comparable to the facts in this case; and this Court's application of *Crawford* in this matter mandates the grant

10

of habeas relief and the rejection of the *Ohio v. Roberts* analysis.  The *Crawford* Court overturned

the "indicia of reliability" approach toward an out-of-court statement set forth in *Ohio v. Roberts,* 448

U.S. 56 (1980), *supra,* and found that "[t]estimonial statements of witnesses absent from trial have

been admitted only where the declarant is unavailable, and only where the defendant has had a prior

opportunity to cross-examine." *Crawford v. Washington,* 541 U.S. at 59.  Since Petitioner did not

have a prior opportunity to cross examine the Complainant about his alleged testimonial statements

to Officer Raboczyak, Petitioner contends that Officer Raboczyak's testimony was inadmissible under

*Crawford.*

Respondent's answer is four-fold: (1) *Crawford,* a 2004 case, was not "clearly established

federal" case law at the time the Michigan Court of Appeals reviewed this issue in 2002; (2) the law

set forth in *Crawford* is not retroactive; (3) Complainant's statements were not testimonial in nature;

and (4) any error in admitting Officer Raboczyak testimony was harmless.  The Court finds that

*Crawford* is not retroactive in this case and was not "clearly established law" in 2002.  The Court

declines to address the issues of whether the statements were testimonial in nature and whether their

admissibility resulted in harmless error.

Case law provides that *Crawford* presents a new rule of criminal procedure regarding the

admissibility of testimonial hearsay statements.  *Dorchy v. Jones,* 398 F.3d 783, 788 (6th Cir. 2005).

"Under most circumstances, [ ], newly promulgated rules of criminal procedure do not apply

retroactively to cases on collateral review.  *Id; Teague v. Lane,* 489 U.S. 288, 305-11 (1989) (holding

that a habeas petitioner could not benefit from a recent Supreme Court decision declaring racially-

based preemptive challenges invalid, because that decision could not be applied retroactively to cases

11

on collateral review).

New rules apply retroactively only where they place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," or where the new rule is "implicit in the concept of ordered liberty." *Teague v. Lane*, 489 U.S. at 307. The latter category is "reserved for watershed rules of criminal procedure." *Id.* at 311. *Dorchy* indirectly held that the *Crawford* rule does not come within either of the retroactive exceptions, and therefore, could not be applied to any cases decided before March 8, 2004. *Dorchy v. Jones*, 398 F.3d at 788. This is evident by the *Dorchy* court's holding that review of a habeas issue is conducted in light of the law as it existed at the time of the final state court decision. *Id.; see also, Baze v. Parker,* 371 F.3d 310, 318 (6th Cir. 2004). In this case, the final state court decision was on September 30, 2002. The *Crawford* decision did not come down until March 8, 2004. Therefore, under the *Baze* and *Teague* decisions, the Petitioner in this case cannot avail himself of the new rule articulated in *Crawford. See also, Dorchy v. Jones,* 398 F.3d at 788.[2]

Accordingly, since *Crawford* cannot be applied retroactively in this case; and the law set forth in *Crawford* was not existing when the final state court decision was rendered in this matter, Petitioner's reliance upon *Crawford* in support of his argument for habeas relief is misplaced.

---

[2]

The Ninth Circuit's finding is contrary to the majority of circuits relative to this issue. In *Buckting v. Bayer,* 399 F.3d 1010, 1012-13 (9th Cir. 2005), the court found that "because the *Crawford* rule is both a 'watershed rule' and one 'without which the likelihood of an accurate conviction is seriously diminished,' the rule is retroactive. *See also, Schriro v. Summerlin*, 542 U.S. 348; 124 S.Ct 2519, 2523 (2004).

## VI. <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes that Petitioner's claim for habeas relief filed pursuant to 28 U.S.C. §2254 is without merit.

IT IS HEREBY ORDERED that the Petition for Writ of Habeas Corpus **[Doc. #1-1, filed December 22, 2003]** is **DENIED** and this matter is **DISMISSED WITH PREJUDICE.**

_____s/Bernard A. Friedman_____
HONORABLE   BERNARD   A.   FRIEDMAN
UNITED STATES DISTRICT COURT

Dated:____July 12, 2005_____

13